241367 Grand Traverse Band of Ottawa et al. v. Blue Cross Blue Shield of Michigan Arguments not to exceed 15 minutes per side. Mr. Reinders for appellants. May it please the Court, good morning. Perrin Reinders here on behalf of the Grand Traverse Band of Ottawa and Chippewa Indians and its Welfare Benefit Plan. And Judge Moore I'd like to reserve three minutes for rebuttal. Fine. So I want to talk a little bit about the Health Care False Claims Act claim that my client brought. And I also want to address statute of limitations issues. But to set those up if I may, I'd like to kind of frame out how this case is set up. So there are two groups of people that are protected, that are provided employee benefits or health care benefits I should say. There's the group 19 and this consists of tribal members employed by the tribe. There's group 20 and that consists of tribal members who are not employed by the tribe. So if 19 which is employees, we have 20 non-employees. We're only talking about tribal members. So whether you're in a different group if you're employed or not. So are there two separate plans? One for what I'll call the employees and one that I'll call the members of the tribe? It's an interesting question. Depending on what you mean by plan, ERISA has kind of a legal meaning for plan. But understand that we also have a group here that are not employees so not governed by ERISA. We certainly have two groups. There's one fund, this welfare fund that is one of the plaintiffs. And there are different types of benefits that people in different groups might have. So I would say colloquially you might say there are two plans but there are definitely two groups. And they're administered by Blue Cross. Both are administered by Blue Cross. But it's a different demographic makeup in each group. The group 19 employee group, the only issue there is the statute of limitations. The group 20 group, which is the non-employees, has a statute of limitations issue relating to the common law breach of fiduciary duty claim, which is fundamentally indistinguishable from the ERISA claim for the group 19. So it's these breach of fiduciary duty claims for the different groups. Both involve statute of limitations issues. But also the group 20, because it is not employees and it's not subject to ERISA, it's a state law governed group, has this health care false claims act claim. And I would like to start there if I may. The first issue that I would like to address is the fact that the trial court mischaracterized our complaint. The trial court approached the claim as if we were saying that Blue Cross was obligated to follow these Medicare-like rate provisions. Blue Cross isn't obligated by the Medicare-like provisions. It's providers that are required under the MLR, I'll use Medicare-like rates, from my client, paying claims on behalf of tribal members. But it's Blue Cross that is administering those claims and it's Blue Cross that is a fiduciary that has a responsibility to spend my client's plan money as a fiduciary should, with prudence and in the best interest of the groups, not in its own best interest. And a quick aside, the more money my client paid on claims, the more money Blue Cross made on fees. My concern though is, as I understand it, you're saying that the district court misinterpreted your complaint. Correct. So what is the language of your complaint that you think the district court misinterpreted and what do you think that language says? So there was nothing in our complaint from which you could reasonably conclude that we were accusing Blue Cross of violating the MLR regulations. We never said that. There's nothing in our complaint. What we alleged is that as a fiduciary, it was their job to preserve plan assets, not pay more than was required, and that they breached that fiduciary duty by paying more. You're interrupting my question. I'm sorry. My question is, what is the language in your complaint, the actual language in your complaint that you claim was misinterpreted by the district court and what is it that you think that language said or that the district court should have read that language to say? Well, I'm having trouble answering it because I don't know that there was anything in our complaint that the judge could read to say that we were making that kind of allegation. We alleged that Blue Cross was a fiduciary. We alleged that they knew about the MLR regulations. We alleged that they were the only ones that knew the difference between their discounts and what the MLR regulations would have afforded us. They knew that we were entitled to pay less and because they had, in effect, a conflict of interest, they didn't do that. So for the MLR, you're saying that Blue Cross was required to make sure that you just paid MLR rates on the member's plan? So both groups, whether you're under the ERISA rubric or you're under a common law breach of fiduciary duty rubric, in both instances, because Blue Cross knew that this was involving tribal members and that tribal members were entitled to pay no more than Medicare-like rates, the way the statute reads is that the provider was obligated to accept Medicare-like rates. Because Blue Cross knew that the provider had to accept Medicare-like rates, it breached its fiduciary duty, whether that's under ERISA or common law, depending on if you're the federal ERISA group or you're the state law non-employee group, to preserve plan assets and pay only what was actually owed. But that, I thought, the whole, that was disposed of on statute of limitations grounds. Because the argument that was accepted by the district court was that you knew in 2009 and you didn't bring suit until 2014. Right. And yes, all of these issues kind of blend together in a nice stew of issues. I guess I'm having trouble understanding. It seems like under the statute you have to have a false statement or act, right? Right. And I'm looking at paragraph 74 of your First Amendment complaint. It seems like that's where you make your allegation of falsity. Is that not right? Well, we also allege more generally in our general allegations, we've cited this in our briefing. Can you cite to any other provisions of the complaint that you're relying upon? So I would cite to paragraph 17 and then also 49 through 57. And maybe now I've finally answered your Honor's question and I apologize if I was obtuse. What do those paragraphs say in plain English without our having to look at them right now? We will look at them later on, obviously. No, sure. And I thought I might need them. So this all boils down to Blue Cross's awareness that the tribe was entitled to pay no more than Medicare-like rates. And Blue Cross's promise to us that even before 2009, even before this contract, that their rates were just as good, maybe even better than the Medicare-like rates. Nothing to worry about. Okay. So is this the argument that their rates were close to MLR? Then as those assurances seemed to rang hollow and could not be corroborated, eventually in 2009, Blue Cross said that it would enter into an agreement with us and with one of the providers to secure additional discounts over their usual discounts. The facility claims processing agreement provided initially for an additional 8% discount. This was Blue Cross's representation to my client of what it anticipated should be done going forward. This was called a prospective differential. It wasn't reflective of what they said had happened or they weren't taking back any of their assurances that they had been providing MLR or maybe even better, predicting going forward that they would need to improve their benefits or their discounts by 8%. Subject to review over and over again, it at some points may be determining that there was nothing additional that needed to be provided. If you're relying on the FCPA, which is a contract, then aren't you limited to contract damages, which you've already settled, as opposed to getting tort damages? We have settled it. Certainly there's a set-off, but I would say no, Your Honor, and we're not relying on the FCPA. The FCPA was part of the scheme, part of the contract. The misrepresentation scheme that was perpetrated on my client. My client knows it's entitled to something. It doesn't have the data. It asks for the data. It's eventually told that prospectively for this one year, we're going to give you an additional 8% subject to continued review. When is your theory, either under the actual first amended complaint or under your proposed second amended complaint, when is your theory as to when the statute of limitations, when you had the knowledge that would allow the statute to run? Knowing we needed actual knowledge, that was in 2012. What happened was in 2012, because under this contract, this prospective differential was to be recalculated each period, relevant period, and it never was. My client was asking, well, what is it supposed to be next? It could be zero. It could be more. We don't know. What is it supposed to be? Eventually in 2012, my client conducted a third party audit of a small set of claims and determined that the claims that Blue Cross had processed had actually not been even close to MLR. It's in 2012 when that audit is performed that they now know, they have actual knowledge of the claim. I see my lights on, but I don't know if I'm still responding to a question. Thank you, Your Honor. Good morning. May it please the Court. Philip DeRozier appearing on behalf of the defendant at Appellate League Blue Cross Blue Shield of Michigan. I think I'd like to just start with the statute of limitations issue, if I could, which pertains, I think as we've been talking about, to the ERISA and the common law breach of fiduciary duty claims. We think that the district court properly dismissed those claims under the statute of limitations because this is the key. If you go to the allegations in the First Amendment complaint, and really even the admissions and briefing throughout the case, plaintiffs knew in 2009, March 2009, when they entered into this facility claims processing agreement, which I'll call the FCPA if that's okay, they knew that they were not obtaining Medicare-like rates. In fact, that was the whole point, and the district court talked about this extensively. The whole point of this FCPA was plaintiffs knew they weren't getting the Medicare-like rates, so the parties agreed that Blue Cross would process the claims for services at this Munson Hospital using its network rates plus a discount. And so the problem, though, is that because the failure to obtain Medicare-like rates is the only factual basis alleged in the complaint for both of the breach of fiduciary duty claims, so both the ERISA claim and the common law claim, they're barred by the three-year statute of limitations. But you're saying that it doesn't matter what they discovered they were actually being charged, that the point is, what did they agree to that wasn't the Medicare or the Medicare-like rate, and they knew that at the outset. That's exactly right. They knew in March 2009 that they were not getting the Medicare-like rate, which is the factual basis for their claim for the breach of fiduciary duty. So if we look at their effort to amend the first amended complaint and their proposed second amended complaint, why didn't the district court err in saying it would be futile to allow that in that they were asking for rates close to the Medicare rate and that they say they were promised rates close to the MLR, and they didn't know until we heard recently 2012 or some other such year, as opposed to the 2009 year. So I think that there are two reasons why that was not error. So the focus at that time, when the plaintiff sought to amend their complaint, was this language in the facility claims process and agreement that says that the parties were going to endeavor to provide a discount that's close to MLR. So what the district court explained as well, close to necessarily assumes that it could be more, it could be less. And so in other words, it didn't change anything. It didn't change the knowledge that they had. They knew that they weren't getting MLR. And all they offered in support of the request to amend the complaint was referencing this language in the FCPA that said, well, we're going to try to get you a discount that's close to MLR. So why wouldn't they be entitled to rely on a representation that they were going to get close to MLR, and then only find out a few years later that your client was not actually giving any efforts, hypothetically, to get close to MLR? Well, they, okay, so there was, no, they didn't make any argument or claim, as I recall, in support of the request for leave to amend that there were no efforts being made. I mean, this was a continuing process, and there were efforts being made. But I think the important thing to focus on with respect to this close to, and with respect to the testimony that was cited in conjunction with the motion for leave to amend, at that time, the witnesses, plaintiffs' witnesses, they knew that close to could mean more or could mean less. And so... But there wasn't anything about how close? No, but that's sort of the point, is they knew... I mean, aren't they, in their amended pleading, are they not trying to say, it really wasn't that close? Is that what their new theory is? Well, I'm not, it's hard to track the theories, honestly. But I think that what they're trying to say is, because if you look at their brief, they sprinkle in multiple times, we pointed this out in our brief, this idea that there was a promise that they were going to get better than MLR. Well, that's not in the complaint. It's not in the facility claims process agreement. All we know is that the only statement that was made was with respect to the language close to in the facility claims processing agreement, and the plaintiff's own witnesses acknowledged that they knew at the time they entered in. And so, for example, we point specifically to John Petoskey, who was the tribal in-house lawyer. We cite his testimony in our brief, and I can provide the site if you'd like. He was involved in the negotiation of the facility claims processing agreement, and he was well aware that the agreement would sometimes be better, would sometimes be worse than MLR. Everybody acknowledged that close to was as exact as they could get, because nobody knew for sure. But that kind of goes back to the whole point about the statute of limitations. There was the dissatisfaction with not getting MLR, and being unable to point to something in the FCPA or representations about close to that sort of changed the bottom line, which is... This may not be particularly relevant, but I'm just wondering, why couldn't Blue Cross get the MLR rates? I mean, is there a business reason why that wasn't being achieved? My understanding is that the best way, I think, to think about it is it's a very complex system that Blue Cross uses, and so it just was not realistic to adjust the system. And this is what was told to the tribe, was that we can't... Look, whether it's unwilling, can't, how hard it would be, I'm not sure about that, but it was well understood that Blue Cross was not going to go through the process of changing its entire billing system to accommodate these Medicare-like rates. And then to get into, then, the Health Care False Claims Act part of the case, and as far as whether the regulations actually require Blue Cross to do that, at least for purposes of that claim. And we acknowledge that there's a couple ways of looking at this MLR requirement and to what extent Blue Cross was required to take it into account. There's the extent to which it falls under the breach of fiduciary duty part, right? Is it... Should you account for them? And again, they tried to do that through the FCPA, but there's no claim here or argument relating to... We're not arguing in this case that for purposes of breach of fiduciary duty, the MLR was irrelevant. That's solely a statute of limitations argument. Does the MLR apply to both the member plan and the ERISA plan? When I say member, I mean the tribe member plan and the tribe employee plan? So as far as I understand, the Medicare-like rates regulations would apply to any claims, to any services that are provided to people in the tribes, whether they're members or employees. And I'm happy to be corrected if I'm getting this wrong, but my understanding is the focus, and this was really the subject of this court's decision in the Saginaw Chippewa Indians case, where the court made the point that the MLR regulations kick in so long as somebody from the tribe goes and gets a service, it's authorized by either the Indian Health Service or if the tribe is doing its own plan pursuant to... They call it its own CHS program. As long as the services are authorized, then that triggers the requirement of the hospital to accept MLR as full payment. As I understand your answer, then you're saying the MLR requirements do apply just to the regular members of the tribe, as well as to the employees of the tribe who are under ERISA? Yes, and probably the easiest way to understand how it can apply to non-employees is that's the Health Care False Claims Act claim, because that's the state law claim. It does not apply to employees because the employees, that's all under ERISA and it's preempted. So the only reason there's a state law Health Care False Claims Act claim is because it relates to this argument that because Blue Cross, and this goes back to... I want to be very specific about what was alleged in the complaint, and Judge Bush, I think you hit it right on the head. Paragraph 74 is very specific about the basis for the Health Care False Claims Act claim. It's the amount charged for paying the claims was false because plaintiffs were not required to pay more than Medicare-like rates. So that was the entire focus of the summary judgment briefing, the decision by the district court. So Judge Moore, going back to your question, what I think this is all confirming is, yeah, that claim solely relates to members. It has nothing to do with employees. So that I'm clear about what our argument is on the Health Care False Claims Act claim, it's purely that when you look at the Medicare-like regulations, not about whether it's employees versus members, it's just simply that because the HCFCA claim is premised upon a claim that Blue Cross had not a fiduciary... and it's nothing to do with fiduciary obligations. They're saying that if you look at the... it has to be the language of the MLR regulations. Their claim is if you look at the MLR regulations, those regulations impose a requirement on Blue Cross to obtain MLR. And that is what plaintiffs allege makes the claims that were submitted allegedly false for purposes of that very specific statute, right? Because again, the Health Care False Claims Act is very specific. It only talks about claims that are submitted to a health care insurer and, you know, we have a standing argument that, you know, if I have time, I'd like to touch on it because there's another component to the HCFCA claim. But setting that aside for a moment, the key to the operation of the HCFCA is you need to have a claim, it needs to be submitted to the health care insurer, and that claim in order for there to be a state law claim under the HCFCA, it has to be false. So their claim here as alleged is that it's false because it didn't incorporate MLR. So that is why you need to go to the MLR regulations, the text, and ask yourselves, as the district court did, is there anything in the regulation that specifically imposes an obligation on Blue Cross to get MLR such that it would make, you know, the claim false? So you're saying there was no obligation on Blue Cross to provide MLR. That's one reason why it's not false. But there's also the reason that they allege in their complaint that Blue Cross has already told them they're not going to give them MLR. Isn't that another reason to say why it's not false? I'm just thinking aloud here. But they've already disclosed they're not going to give them MLR rates. So how can it be false that they don't give them the MLR rates? And you're right. So it's funny. To me, as I think through the way this case developed, that sort of, and maybe it's fair, if you want to assume that that was their HCFCA claim, that it had something to do with promises to get MLR, you're right. Blue Cross told them that they were not going to get MLR. Was the HCFCA claim disposed of by the district court on statute of limitations grounds? No. The HCFCA claim was disposed on summary judgment on the ground that the claims were not false because under the regulatory text there is no obligation on Blue Cross's part to obtain MLR. And so that's where you look at it as we discuss in our brief. It's this idea that if you look at the regulations it talks about what these hospitals are required to quote, accept. The only time that the regulations talk about, there's nothing about third party administrator payers like Blue Cross. The only time that the regulations talk about payment, so on occasion the regulations will refer to shall pay, may pay, that's in connection with when payments are made by the tribal organizations themselves. It's a totally separate situation than when Blue Cross is acting as a third party administrator. So that's the rationale that the district court used to dispose of the HCFCA claim, is that there's no legal argument that can be made that those regulations, that Blue Cross, you know, that it applies to them. If I could touch though, just for a moment, I know I just have about a minute or so left, I did think it's helpful. And the district court didn't agree with our standing argument. And it was raised at the motion to dismiss stage. So the district court disagreed with it. And we understand that. But if you'll indulge me, because we do think it supports the court's ultimate decision on summary judgment. If you take a look at the HCFCA and think about what it is there for and what it does, is again, it's all about false claims. So here our argument was what you need to do with the HCFCA is you need to be able to recognize that in this situation, the HCFCA claim, it only applies to claims that relate to services that were for tribal members, not for employees. But the HCFCA, if you're going to be a self-insured health care insurer under that statute, there's a requirement that you're providing health care benefits to employees. And so that's why in our view, if the claims for service that are at issue don't relate to services that were provided to employees, then the tribes can't fall under the definition of a health care insurer because the health care insurer is an entity that in the case of a self-insured tribe, they're providing these with respect to how the HCFCA and the MLR regulations fit in this instance. You're saying that they couldn't be a self-insurer if they only were providing the service to members? No, I'm saying, because this is what the district court said. The district court said that so long as during this time frame, the tribes are providing health care benefits to employees in some instances, that that makes them a health care insurer across the board. And what we're saying is that what the statutory language requires, if you look at it in context, because it's focused on false claims and those claims are requests for payments for services provided for a quote specified health care service, that's 752.1002D. And this is all in the brief. So our position there is that it's not enough that the tribes were providing also services for employees. You have to tie the specific claim that's alleged to be false to a service that involved a request for payment for a service provided to an employee, not members. So this sort of gets back to my original question. Are there two separate plans here, one for members of the tribe and one for employees? My understanding, which I think is consistent with my brother counsel, is so the 109 plan, that there are, so my understanding is there's two plans. There's 10, the 1019 is for tribal members that are also employees. The other plan, 1020, is only if you are a tribal member you are not also an employee. And so the reason why there are the two, I think it's fair to call them two plans, is because ERISA only applies to one and not the other. And it's because of that employee. And am I right that the health care FCA, which is a Michigan law, that only applies to the people who are not employees? Correct. Yes, that's exactly right. I see your red light is on any further questions? No, thank you. Okay, thank you. So I'd like to answer, or at least address a comment. I would submit that the claim was false in violation of the Health Care False Claims Act because it was for more than what was owed. And Blue Cross knew that it was more than what was owed. Blue Cross doesn't do Medicare every day. It's doing Medicare right this second. It knows what Medicare rates are. It knows what the Medicare rates are at every provider, doctor, hospital, whatever. So are you saying that the agreement just doesn't make any difference here, that they are bound by only the Medicare rate regardless of the agreement? You're talking now about the facility claims process? Yeah, I am. But I mean, when you're saying they knew they weren't paying Medicare, the appropriate rate, so it doesn't matter that there was sort of an agreement that they were doing something different from that? They lied to us to get that facility claims processing agreement. They lied to us saying that 8% is going to get you close to, sometimes better than, maybe sometimes not quite as MLR. That wasn't true. Not even close. We've done lots of discovery on this. I've seen the emails. I've seen the analysis. Not even close. But they told us that. And then they presented claims to us every day for payment because they're administering the claims. They present them to us to pay them back or to pay in advance. And they knew that those claims were false. Why false? Because that's not what was actually owed. So the 8% discount on the FCPA is a discount from non-Medicare rates? Is that a discount from what the uninsured pay? You've got the Medicare rate and what they were actually paying on our behalf, supposedly just as good as MLR, was probably 50% more than the Medicare rate. And they were proposing to take their rate down 8%. And when did you figure out that this was happening? 2012. Yes, 2012. How did you figure that out? Through an audit of a sampling of claims. And that's when you are arguing for the overturning of the district court who said it would be futile to have a second amended complaint. You're saying, no, it wouldn't be because the statute of limitations would be different and we now realize what we should put in the second amended complaint. But just to be clear, our Health Care False Claims Act claim is timely. That claim is timely. That claim is not subject to this timeliness issue. What's important about the timeliness issue, which is not involving the HCFCA, the other claims, is that Blue Cross knew the facts and they originally told us that you are getting as good as MLR, maybe even better. And it was only over time that they conceded that they needed to give my client a small discount. But even that was not true. My client deserved a much bigger discount. And in fact, the judge below seemed to think that the FCPA really kind of like, aha, you know, shone the light on something. In fact, the FCPA is just another part of the scheme to hide from us that we are paying more than we need to, which goes to their benefit because their fees are then more than they should have been. Thank you, Your Honor. I greatly appreciate the court's time. Thank you both for your argument. The case will be submitted.